UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| INDUSTRIAL MARITIME CARRIERS, LLC | * * * | CIVIL ACTION NO. |
| *Plaintiff* v. | * * * | JUDGE |
| NALCO COMPANY | * * * | MAGISTRATE A JURY IS DEMANDED |
| *Defendant* | * | |

* * * * * * * * * * * * * * * * * *

**COMPLAINT FOR DAMAGES**

The plaintiff, Industrial Maritime Carriers, LLC ("IMC"), files this Complaint for Damages and respectfully represents as follows:

**THE PARTIES**

1. IMC, a Louisiana company with its domicile address in Baton Rouge, Louisiana, was at all material times and is engaged in the business of operating vessels for the carriage of goods by sea. Specific to this action, IMC is the time charterer of the M/V KAYA SCAN and ocean carrier of certain cargo shipped by the defendant, NALCO Company ("NALCO") as further described herein.

2. NALCO, on information and belief, is a corporation organized under the laws of the State of Delaware, with its principal place of business in Naperville, Illinois. At all material times, NALCO was doing business within this district. It may be served through its registered agent, CT Corporation Systems, located at 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA 70808. Specific to this action, NALCO was the shipper of certain hazardous cargo further described herein.

1

## JURISDICTION AND VENUE

3. This Court may properly exercise subject matter jurisdiction over IMC's claims pursuant to 28 U.S.C. 1333, as it is a case or controversy falling within this Court's admiralty jurisdiction. In addition, this Court may exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are completely diverse and the amount in controversy exceeds $75,000.00.

4. Venue is proper in this district based upon NALCO's acceptance of the forum selection clause set forth in IMC's bill of lading terms and conditions and IMC's tariff on file with the Federal Maritime Commission, requiring the parties to resolve the instant claims in this Court pursuant to 28 USC § 1391.

## FACTUAL BACKGROUND

5. On information and belief, NALCO entered into a contract of carriage with IMC for the shipment of certain cargo from Houston, Texas, to Guanta, Venezuela. Pursuant to the agreement, IMC provided NALCO with three (3) 20' containers (the "Containers"), which were in turn packed or "stuffed" by NACLO or agents for whom it is responsible. The Containers were received by IMC for shipment on or about July 24, 2012.

6. NALCO listed the contents of the containers as an "INTERMEDIATE BULK" cargo of "ETHANOLAMINE (Monoethanolamine)" (the "Cargo"), and provided a Material Safety Data Sheet indicating that the Cargo was qualified as hazardous material under various federal safety and transportation regulations. *See* Bill of Lading No. IDMCA11NALG48901 (the "Bill of Lading"), attached hereto as "Exhibit A;" *see also* Material Safety Data Sheet, attached hereto as "Exhibit B." The Containers were loaded aboard the KAYA SCAN on or

about August 4, 2012, in Houston, Texas, and secured in the lower hold.  The vessel sailed shortly thereafter.

7. In route to Guanta, Venezuela, the KAYA SCAN made a scheduled call at the intermediate port of Port Lisas, Trinidad, on or about August 18, 2012.  Upon opening the tween deck pontoons to discharge other cargo located in the lower hold, the crew of the KAYA SCAN observed an unknown liquid covering the deck of the lower hold, and also noted the presence of fumes and a bad odor.  At that time, discharge operations were stopped and hazmat inspectors were called out to conduct testing and analysis of samples from the lower hold.

8. The testing identified the liquid as monoethanolamine.  In the course of determining the source of liquid, the Containers were opened, at which time it was observed that the Cargo had been shipped in a number of individual plastic totes inside the Containers.  On inspection, five (5) of the totes in which the Cargo was shipped were determined to be leaking as a result of insufficient and/or improper packaging.  Specifically, the seals on several of the tote tanks had failed and the tote tanks had been overfilled, resulting in the spill of monoethanolamine.

9. As a result of the spill and the hazardous nature of the Cargo (which is also an environmental pollutant), IMC was obligated to undertake and pay for clean-up and remediation costs.  Completion of clean-up and remediation delayed the sailing of the KAYA SCAN for approximately thirty (30) days.  In addition, the monoethanolamine resulted in damage to the vessel.  Consequently, IMC suffered damages including, but not limited to, demurrage, increased dockage, clean-up, remediation, and repair costs.

**COUNT 1 – Insufficient Packaging**

10. IMC incorporates and reasserts the allegations contained in Paragraphs 1 through 9 as if fully set forth herein.

11. NALCO, as the shipper of the Cargo, was under a legal duty to ensure that the Cargo was properly packaged when it was delivered to IMC for carriage. This duty is imposed upon shippers under the general maritime law and/or by operation of Section 4(2)(n) of the Carriage of Goods by Sea Act, 46 U.S.C. 30701 *et seq*. ("COGSA"). NALCO breached this duty and/or was negligent in the following non-exclusive ways:

   a) failing to ensure that the Cargo was adequately contained;

   b) failing to adequately prepare the Cargo for shipment;

   c) shipping the Cargo in an unsuitable container;

   d) failing to comply with all pertinent federal regulations for the shipment of hazardous cargo;

   e) failing to inspect the totes to ensure that they were an adequate and safe means of preparing the Cargo for shipment;

   f) improperly overfilling the totes, rendering them unfit for carriage; and

   g) other acts and/or omissions which may be shown at trial in this matter.

11. As the direct and proximate result of NALCO's acts and/or omissions, the Cargo was spilled inside the KAYA SCAN during the voyage due to no fault of IMC, causing damage to the vessel, and the Containers, also delaying the sailing of the vessel and necessitating environmental clean-up and remediation. IMC sustained damages including, but not limited to, direct costs in responding to the spill, increased charges associated with the call of the KAYA SCAN at Point Lisas, Trinidad, repair costs to the vessel, damage to the Containers, and lost profits.

12. The damages sustained by IMC were directly and proximately caused by NALCO's negligence and/or breach of the duties imposed upon it as a shipper under COGSA. NALCO is therefore liable to IMC for all direct and indirect losses sustained.

### COUNT 2 – Breach of a Maritime Contract

13. IMC incorporates and reasserts the allegations contained in Paragraphs 1 through 9 as if fully set forth herein.

14. The Bill of Lading issued by IMC constitutes a maritime contract binding on the "Merchant." NACLO, as the shipper identified on the face of the Bill of Lading, qualifies as a "Merchant" as that term is defined in Clause 1 of the Bill of Lading terms and conditions. *See* "Exhibit A" at p. 4.

15. On the face of the Bill of Lading, NALCO's authorized representative and/or agent specifically warranted that "the contents of this consignment . . . are classified packages marked and labeled/placarded, and are in all respects in proper condition for transport according to applicable international and national government regulations." *See* "Exhibit A" at p. 3. Clause 17(c) of the Bill of Lading terms and conditions also obligates NALCO to "provide [IMC] with cargo that is . . . sufficiently packed for carriage." The terms and conditions of the Bill of Lading are hereby incorporated as if set fourth herein *in extenso*.

16. NALCO materially breached its obligations under the contract of carriage in the following non-exclusive ways:

   a) failing to ensure that the Cargo was adequately contained;

   b) failing to adequately prepare the Cargo for shipment;

   c) shipping the Cargo in an unsuitable container;

    d) failing to comply with all pertinent federal regulations for the shipment of hazardous cargo;

    e) failing to inspect the totes to ensure that they were an adequate and safe means of preparing the Cargo for shipment;

    f) improperly overfilling the totes, rendering them unfit for carriage;

    g) failing to return carrier owned containers in the same order and condition as when they were provided to NALCO; and

    h) other material breaches of the contract of carriage which may be shows at trial in this matter.

16. As a direct result of NALCO's breach of the contract of carriage, IMC sustained losses including, but not limited to, increased costs of performing the voyage, damage to IMC's property, and lost profits. These losses were foreseeable and should have been reasonably anticipated by NALCO at the time of contracting.

17. In addition, NALCO's breach of the contract of carriage directly resulted in a delay to the KAYA SCAN, rendering NALCO liable for demurrage, as well as any other remedy available to IMC under the Bill of Lading terms and conditions.

## JURY DEMAND

18. IMC hereby demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Industrial Maritime Carriers, LLC, prays that after due proceedings are had, IMC have judgment entered in its favor for all amounts shown at trial, as well as other expenses and charges that may accrue together with pre-judgment interest, costs, and attorneys' fees.  IMC further prays for all other general and equitable relief to which it may be entitled.

Respectfully submitted,

*/s/ Jason P. Waguespack*
JASON P. WAGUESPACK (#21123)
NATHAN G. ORF (#34375)
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
701 Poydras Street, 40th Floor
New Orleans, Louisiana 70139
Telephone:  (504) 525-6802
Facsimile:  (504) 525-2456
jwaguespack@gjtbs.com
norf@gjtbs.com
Counsel for **Industrial Maritime Carriers, LLC**