**Industrial Maritime Carriers**

# COPY NOT NEGOTIABLE

Sheet 1 of 3
**BILL OF LADING**

| SHIPPER/EXPORTER (COMPLETE NAME & ADDRESS) | CONTRACT NO. | B/L NO. |
|---|---|---|
| NALCO COMPANY<br>1601 WEST DIEHL ROAD<br>NAPERVILLE, IL 60563-1198<br><br>605631198 | 11NALG489 | IDMC11NALG489001 |

EXPORT REFERENCE   SEE BELOW

FORWARDER REF. NO.   JOB# 12M212637

SHIPPER'S REF. NO.   0002632004 0002632003 0002632002

| CONSIGNEE (COMPLETE NAME & ADDRESS) OR ORDER |
|---|
| NALCO VENEZUELA S.C.A.<br>CAMPO NALCO<br>CARRETERA BUENA VISTA KM1<br>ANACO<br>VENEZUELA |

FORWARDING AGENT, F.M.C. NO.  1127   CHB NO. 4660
BDP INTERNATIONAL, INC.
100 CONCORD ROAD
ASTON, PA 19014

POINT AND COUNTRY OF ORIGIN OF CARGO
BRENNTAG SOUTHWEST  TX

| NOTIFY PARTY (COMPLETE NAME & ADDRESS) |
|---|
| CUSTOMS BROKER DE VENEZUELA<br>CARRETERA DE LA COSTA KM1<br>LOCAL 2, SALIDA DE BARCELONA<br>EDO. ANZOATEGUI, VENEZUELA |

ALSO NOTIFY/ROUTING & OTHER INSTRUCTIONS
CONS #607445 607445/0002632003
607445/0002632002

| PRE-CARRIAGE BY | PLACE OF RECEIPT BY PRE-CARRIER | |
|---|---|---|
| VESSEL                    FLAG<br>ANTIGUA-AND-BARBUDA<br>KAYA SCAN/210305 | PORT OF LOADING<br>HOUSTON, TEXAS | PIER/TERMINAL |
| PORT OF DISCHARGE<br>GUANTA, VENEZUELA | PLACE OF DELIVERY BY ON-CARRIER | TYPE OF MOVE<br>HOOK / HOOK |

PARTICULARS DECLARED BY THE SHIPPER BUT NOT ACKNOWLEDGED BY THE CARRIER

| MARKS AND NUMBERS | NO. OF PKGS. | KIND OF PACKAGES; DESCRIPTION OF THE CARGO | GROSS WEIGHT | MEASURE |
|---|---|---|---|---|
| GESU-249012-8<br>S/N: 000970<br><br>FSCU-773011-8<br>S/N: 000971<br><br>CAIU-202684-0<br>S/N: 000969 | 1 | 20' CARRIER OWNED CONTAINER CONTAINING<br><br>16 INTERMEDIATE BULK CONTAINER UN2491,<br>ETHANOLAMINE (Monoethanolamine)<br>Class 8, PG III, (Flashpoint: 91 C), EmS<br>No. F-A , S-B Above data valid<br>for IMDG INDUSTRIAL CHEMICAL NOS<br>HAZARDOUS NLR | 38924.817LBS<br>17656KG | 832.00FT3<br>23.5596M3 |
| | 1 | 20' CARRIER OWNED CONTAINER CONTAINING<br><br>16 INTERMEDIATE BULK CONTAINER UN2491,<br>ETHANOLAMINE (Monoethanolamine)<br>Class 8, PG III, (Flashpoint: 91 C), EmS<br>No. F-A , S-B Above data valid<br>for IMDG INDUSTRIAL CHEMICAL NOS<br>HAZARDOUS NLR | 38924.817LBS<br>17656KG | 832.00FT3<br>23.5596M3 |
| | 1 | 20' CARRIER OWNED CONTAINER CONTAINING<br><br>16 INTERMEDIATE BULK CONTAINER UN2491,<br>ETHANOLAMINE (Monoethanolamine)<br>Class 8, PG III, (Flashpoint: 91 C), EmS<br>No. F-A , S-B Above data valid | 38924.817LBS<br>17656KG | 832.00FT3<br>23.5596M3 |

| NOTICE: All rates apply from ship's tackle at port of loading to end of ship's tackle at discharge, unless otherwise agreed. | No. of original Bills of Lading<br>3 | Freight and Charges Payable At:<br>HOUSTON, TEXAS | Daily demurrage rate (additional Clause ) | Shipper's declared value subject EXTRA FREIGHT as per tariff and additional Clause B |
|---|---|---|---|---|

RECEIVED FOR SHIPMENT by the Carrier in apparent good order and condition (unless otherwise stated herein) the number of Packages and the cargo as specified above, weight, measure, marks, numbers, quality, contents and value unknown, for carriage to the Port of discharge or so near thereunto as the vessel may safely get and lie always afloat, to be delivered in the like good order and condition at the Port of discharge unto the lawful holder of the Bill of Lading, on payment of freight plus other charges incurred in accordance with the provisions contained in this Bill of Lading. In accepting this Bill of Lading the Merchant* expressly accepts and agrees to all as stipulations on Page 1, Page 2, and any addenda, whether written, printed, stamped or otherwise incorporated, as fully as if they were all signed by the Merchant. When in Order form, one original Bill of Lading must be surrendered duly endorsed in exchange for the cargo or delivery order, whereupon all other Bills of Lading to be void.

IN WITNESS whereof the Carrier or its Agent has signed the number of original Bills of Lading as stated herein, all of this tenor and date.

## Industrial Maritime Carriers, L.L.C.

BY_____

As Agent, for the Carrier

ISSUED AT   Houston, Texas          Aug-04-12

DATE

**Industrial Maritime Carriers**

# COPY NOT NEGOTIABLE

Sheet 2 of 3

**BILL OF LADING**

| SHIPPER/EXPORTER (COMPLETE NAME & ADDRESS) | CONTRACT NO. 11NALG489 | B/L NO. IDMC11NALG489001 |
|---|---|---|

SHIPPER/EXPORTER (COMPLETE NAME & ADDRESS)
NALCO COMPANY
1601 WEST DIEHL ROAD
NAPERVILLE, IL 60563-1198
605631198

CONTRACT NO. 11NALG489
B/L NO. IDMC11NALG489001
EXPORT REFERENCE    SEE BELOW
FORWARDER REF. NO.    JOB# 12M212637
SHIPPER'S REF. NO.    0002632004 0002632003 0002632002

CONSIGNEE (COMPLETE NAME & ADDRESS) OR ORDER
NALCO VENEZUELA S.C.A.
CAMPO NALCO
CARRETERA BUENA VISTA KM1
ANACO
VENEZUELA

FORWARDING AGENT, F.M.C. NO.  1127    CHB NO. 4660
BDP INTERNATIONAL, INC.
100 CONCORD ROAD
ASTON, PA 19014

POINT AND COUNTRY OF ORIGIN OF CARGO
BRENNTAG SOUTHWEST   TX

NOTIFY PARTY (COMPLETE NAME & ADDRESS)
CUSTOMS BROKER DE VENEZUELA
CARRETERA DE LA COSTA KM1
LOCAL 2, SALIDA DE BARCELONA
EDO. ANZOATEGUI, VENEZULA

ALSO NOTIFY/ROUTING & OTHER INSTRUCTIONS
CONS #607445 607445/0002632003
607445/0002632002

| PRE-CARRIAGE BY | PLACE OF RECEIPT BY PRE-CARRIER | |
|---|---|---|
| VESSEL              FLAG ANTIGUA-AND-BARBUDA KAYA SCAN/210305 | PORT OF LOADING HOUSTON, TEXAS | PIER/TERMINAL |
| PORT OF DISCHARGE GUANTA, VENEZUELA | PLACE OF DELIVERY BY ON-CARRIER | TYPE OF MOVE HOOK / HOOK |

PARTICULARS DECLARED BY THE SHIPPER BUT NOT ACKNOWLEDGED BY THE CARRIER

| MARKS AND NUMBERS | NO. OF PKGS. | KIND OF PACKAGES; DESCRIPTION OF THE CARGO | GROSS WEIGHT | MEASURE |
|---|---|---|---|---|
| | | < Continued... > for IMDG INDUSTRIAL CHEMICAL NOS HAZARDOUS NLR | | |

********PLEASE RELEASE ORIGINAL BILLS ON LADING AT THE DESTINATION*********
RIF #: J-30973322-2

" I HEREBY DECLARE THAT THE CONTENTS OF THIS CONSIGNMENT ARE FULLY AND ACCURATELY DESCRIBED ABOVE BYED, MARKED AND LABELED AND ARE IN PROPER CONDITION FOR THE PROPER SHIPPING NAME, AND ARE CLASSIFIED PACKAGED, MARKED AND LABELLED/PLACARDED, AND ARE IN ALL RESPECTS IN PROPER CONDITION FOR TRANSPORT ACCORDING TO APPLICABLE INTERNATIONAL AND NATIONAL GOVERNMENT REGULATIONS. IN CASE OF AN EMERGENCY, PLESE CONTACT NALCO, BY CALLING CHEMTREC DAY OR NIGHT AT (800) 424-9300 (USA), (202) 483-7616, (703) 527-3887. IT IS DECLARED THAT THE PACKING OF TEH GOODS INTO
THE CONTAINER/VEHICLE HAS BEEN CARRIED OUT IN ACCORDANCE WITH THE APPLICALBE PROVISIONS.
CHUCK FOUTZ 7/12/12

"THESE COMMODITIES, TECHNOLOGY, OR SOFTWARE WERE EXPORTED FROM THE UNITED STATES IN ACCORDANCE WITH THE EXPORT ADMINISTRATION REGULATIONS. DIVERSION CONTRARY TO U.S. LAW PROHIBITED."
RELEASE B/L TO:RELEASE ORIGINAL BL AT DEST

AESX20120724009837

| NOTICE: All rates apply from ship's tackle at port of loading to end of ship's tackle at discharge, unless otherwise agreed. | No. of original Bills of Lading 3 | Freight and Charges Payable At: HOUSTON, TEXAS | Daily demurrage rate (additional Clause ) | Shipper's declared value subject EXTRA FREIGHT as per tariff and additional Clause B |
|---|---|---|---|---|

RECEIVED FOR SHIPMENT by the Carrier in apparent good order and condition (unless otherwise stated herein) the number of Packages and the cargo as specified above, weight, measure, marks, numbers, quality, contents and value unknown, for carriage to the Port of discharge or so near thereunto as the vessel may safely get and lie always afloat, to be delivered in the like good order and condition at the Port of discharge unto the lawful holder of the Bill of Lading, on payment of freight plus other charges incurred in accordance with the provisions contained in this Bill of Lading. In accepting this Bill of Lading the Merchant expressly accepts and agrees to all its stipulations on Page 1, Page 2, and any addenda, whether written, printed, stamped or otherwise incorporated, as fully as if they were all signed by the Merchant. When in Order form, one original Bill of Lading must be surrendered duly endorsed in exchange for the cargo or delivery order, whereupon all other Bills of Lading to be void.

IN WITNESS whereof the Carrier or its Agent has signed the number of original Bills of Lading as stated herein, all of this tenor and date.

## Industrial Maritime Carriers, L.L.C.

BY_____
As Agent, for the Carrier

ISSUED AT    Houston, Texas          Aug-04-12
DATE

**Industrial Maritime Carriers**

# COPY NOT NEGOTIABLE

Sheet 3 of 3
**BILL OF LADING**

| | |
|---|---|
| SHIPPER/EXPORTER (COMPLETE NAME & ADDRESS)<br>NALCO COMPANY<br>1601 WEST DIEHL ROAD<br>NAPERVILLE, IL 60563-1198<br><br>605631198 | CONTRACT NO. 11NALG489 — B/L NO. IDMC11NALG489001<br><br>EXPORT REFERENCE   SEE BELOW<br><br>FORWARDER REF. NO.   JOB# 12M212637<br><br>SHIPPER'S REF. NO.   0002632004 0002632003 0002632002 |
| CONSIGNEE (COMPLETE NAME & ADDRESS) OR ORDER<br>NALCO VENEZUELA S.C.A.<br>CAMPO NALCO<br>CARRETERA BUENA VISTA KM1<br>ANACO<br>VENEZUELA | FORWARDING AGENT, F.M.C. NO. 1127   CHB NO. 4660<br>BDP INTERNATIONAL, INC.<br>100 CONCORD ROAD<br>ASTON, PA 19014<br><br>POINT AND COUNTRY OF ORIGIN OF CARGO<br>BRENNTAG SOUTHWEST   TX |
| NOTIFY PARTY (COMPLETE NAME & ADDRESS)<br>CUSTOMS BROKER DE VENEZUELA<br>CARRETERA DE LA COSTA KM1<br>LOCAL 2, SALIDA DE BARCELONA<br>EDO. ANZOATEGUI, VENEZULA | ALSO NOTIFY/ROUTING & OTHER INSTRUCTIONS<br>CONS #607445 607445/0002632003<br>607445/0002632002 |

| PRE-CARRIAGE BY | PLACE OF RECEIPT BY PRE-CARRIER | |
|---|---|---|
| VESSEL   FLAG<br>ANTIGUA-AND-BARBUDA<br>KAYA SCAN/210305 | PORT OF LOADING<br>HOUSTON, TEXAS | PIER/TERMINAL |
| PORT OF DISCHARGE<br>GUANTA, VENEZUELA | PLACE OF DELIVERY BY ON-CARRIER | TYPE OF MOVE<br>HOOK / HOOK |

PARTICULARS DECLARED BY THE SHIPPER BUT NOT ACKNOWLEDGED BY THE CARRIER

| MARKS AND NUMBERS | NO. OF PKGS. | KIND OF PACKAGES; DESCRIPTION OF THE CARGO | GROSS WEIGHT | MEASURE |
|---|---|---|---|---|
| ON BOARD: 8/04/12<br>FREIGHT PREPAID<br><br>SHIPPER'S LOAD STOW COUNT AND SEAL | | < Continued... > | | |

| NOTICE: All rates apply from ship's tackle at port of loading to end of ship's tackle at discharge, unless otherwise agreed. | No. of original Bills of Lading<br>3 | Freight and Charges Payable At:<br>HOUSTON, TEXAS | Daily demurrage rate (additional Clause ) | Shipper's declared value subject EXTRA FREIGHT as per tariff and additional Clause B |
|---|---|---|---|---|

RECEIVED FOR SHIPMENT by the Carrier in apparent good order and condition (unless otherwise stated herein) the number of Packages and the cargo as specified above, weight, measure, marks, numbers, quality, contents and value unknown, for carriage to the Port of discharge or so near thereunto as the vessel may safely get and lie always afloat, to be delivered in the like good order and condition at the Port of discharge unto the lawful holder of the Bill of Lading, on payment of freight plus other charges incurred in accordance with the provisions contained in this Bill of Lading. In accepting this Bill of Lading the Merchant expressly accepts and agrees to all its stipulations on Page 1, Page 2, and any addenda, whether written, printed, stamped or otherwise incorporated, as fully as if they were all signed by the Merchant. When in Order form, one original Bill of Lading must be surrendered duly endorsed in exchange for the cargo or delivery order, whereupon all other Bills of Lading to be void.

IN WITNESS whereof the Carrier or its Agent has signed the number of original Bills of Lading as stated herein, all of this tenor and date.

## Industrial Maritime Carriers, L.L.C.

BY_____
As Agent, for the Carrier

ISSUED AT   Houston, Texas        Aug-04-12

DATE

# Industrial Maritime Carriers, L.L.C.
## BILL OF LADING TERMS AND CONDITIONS

**1. Definition.**
"Merchant" includes the shipper, the receiver, the consignor, the consignee, the holder of the Bill of Lading, the owner of the cargo and any person entitled to possession of the cargo.

**2. Notification.**
Any mention in this Bill of Lading of parties to be notified of the arrival of the cargo is solely for the information of the Carrier and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder.

**3. Liability for Carriage Between Port of Loading and Port of Discharge.**
(a) The International Convention for the Unification of Certain Rules of Law relating to Bills of Lading signed at Brussels on 25 August 1924 ("the Hague Rules") as enacted in the country of shipment shall apply to this Contract. When the Hague Rules are not enacted in the country of shipment, the corresponding legislation of the country of destination shall apply, irrespective of whether such legislation may only regulate outbound shipments.

When there is no enactment of the Hague Rules in either the country of shipment or in the country of destination, the terms of said Convention shall apply.

*Trades where Hague-Visby Rules Apply.*

In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on 23 February 1968 ("the Hague-Visby Rules") apply compulsorily, the provisions of the respective legislation shall be incorporated into this Contract. The Protocol signed at Brussels on 21 December 1979 ("the SDR Protocol 1979") shall apply where the Hague-Visby Rules apply, whether mandatorily or by this Contract. The Carrier shall in no case be responsible for loss of or damage to cargo, howsoever caused, arising prior to loading, after discharging, or with respect to deck cargo and live animals. Live animals and deck cargo shall be carried subject to the Hague Rules as referred to in this Clause.

(b) The Carrier shall not be responsible for any loss sustained by the Merchant through delay of the cargo, unless caused by the Carrier's personal gross negligence. If the Carrier is held liable in respect of delay, consequential loss or damage other than loss of or damage to the cargo, the liability of the Carrier shall be limited to the freight for the carriage covered by this Contract, or to the limitation amount as determined in sub-clause 3(a) or, if applicable, Additional Clauses, whichever is the lesser.

(c) The aggregate liability of the Carrier and/or any of his servants, agents or independent contractors under this Contract shall, in no circumstances, exceed the limits of liability for the total loss of the cargo under sub-clause 3(a) or, if applicable, Additional Clauses.

**4. Law and Jurisdiction.**
Whenever U.S. COGSA applies, whether by virtue of carriage of cargo to or from the United States of America or otherwise, any dispute arising out of or in connection with this Contract shall be exclusively determined by the United States District Court for the Eastern District of Louisiana, and in accordance with the law of the United States. In all other cases, this Contract shall be construed in accordance with English law and any disputes arising hereunder shall be referred to and finally resolved by arbitration in Singapore, to the exclusion of all other forums, in accordance with the Arbitration Rules of the Singapore Chamber of Arbitration ("SCMA"). The Tribunal for any arbitration shall be comprised of three (3) arbitrators.

**5. The Scope of Carriage.**
The intended carriage shall not be limited to the direct route but shall be deemed to include any proceeding or returning to or stopping or slowing down at or off any ports or places, whether advertised in advance or developed thereafter, for any reasonable purpose connected with the carriage, including bunkering, loading, discharging, restowing, or other cargo operations and maintenance of Vessel and crew.

**6. Substitution of Vessel.**
The Carrier shall be at liberty to carry the cargo or part thereof to the Port of discharge by the said or other vessel or vessels either belonging to the Carrier or others, or by other means of transport, proceeding either directly or indirectly to such port.

**7. Transshipment.**
The Carrier shall be at liberty to tranship lighter, land and store the cargo either on shore or afloat and reship and forward the same to the Port of discharge at Carrier's expense but at Merchant's risk.

**8. Liability for Pre- and On-Carriage.**
When the Carrier arranges pre-carriage of the cargo from a place other than the Vessel's Port of loading or on-carriage of the cargo to a place other than the Vessel's Port of discharge, the Carrier shall contract as the Merchant's Agent only and the Carrier shall not be liable for any loss or damage arising during any part of the carriage other than between the Port of loading and the Port of discharge even though the freight for the whole carriage has been collected by him.

**9. Loading and Discharging.**
(a) Unless otherwise agreed, loading and discharging of the cargo shall be arranged by the Carrier or his Agent.

(b) The Merchant shall, at his risk and expense, handle and/or store the cargo before loading and after discharging.

(c) Loading and discharging may commence without prior notice.

(d) The Merchant or his Agent shall tender the cargo when the Vessel is ready to load and as fast as the Vessel can receive including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the Merchant or his Agent fails to tender the cargo when the Vessel is ready to load or fails to load as fast as the Vessel can receive the cargo, demurrage shall apply, and/or the Carrier shall be relieved of any obligation to load such cargo, the Vessel shall be entitled to leave the port without further notice, and the Merchant shall be liable to the Carrier for deadfreight. Merchant shall also be liable to the Carrier for any overtime charges, losses, costs and expenses incurred by the Carrier.

(e) The Merchant or his Agent shall take delivery of the cargo as fast as the Vessel can discharge including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the Merchant or his Agent fails to take delivery of the cargo as fast as the Vessel can discharge, demurrage shall apply, and/or the Carrier's discharge of the cargo shall be deemed fulfillment of the contract of carriage. Should the cargo not be applied for within a reasonable time, the Carrier may sell the same privately or by auction. If the Merchant or his Agent fails to take delivery of the cargo as fast as the Vessel can discharge, the Merchant shall also be liable to the Carrier for any overtime charges, losses, costs and expenses incurred by the Carrier.

(f) Any equipment that is specifically required for the loading or discharge of the cargo, including lifting frames, slings, saddles and spreader bars, shall be supplied by the Merchant, except where such equipment is onboard the Vessel at the time of loading and/or discharge.

(g) Cargo is to be secured to the Vessel Master's satisfaction. For any delays due to additional securing required by Merchant, its surveyors, representatives or agents, demurrage shall apply. Merchant shall also be liable to the Carrier for any additional costs or expense.

(h) The Merchant shall accept his reasonable proportion of unidentified loose cargo.

(i) At the Port of loading or the Port of discharge, if Merchant requests and Carrier agrees for cargo to be received for loading or discharge directly to/from Merchant's trucks, railwagons or lighter(s), the cargo shall be tendered or delivered as fast as the Vessel can load or discharge, otherwise demurrage shall apply. As this is an accommodation to Merchant, any delays, costs or liability to Merchant supplied equipment shall be solely at Merchant's risk, cost and expense. Any fees, charges, costs or expenses for hooking/unhooking of the cargo shall be for Merchant's account.

(j) Cargo carried under free in and/or free out terms shall be loaded, stowed, trimmed, tallied, lashed, and secured, and/or unlashed and discharged at the cost, expense, risk and responsibility of Merchant, who shall be liable to the Carrier for the actions, omissions, or neglect of the stevedore, freight handler or other party that the Merchant may appoint.

**10. Freight, Charges, Costs, Expenses, Duties, Taxes and Fines.**
(a) Freight, whether paid or not, shall be considered as fully earned upon loading and non-returnable in any event. Unless otherwise specified, freight, demurrage, charges and/or other sums under this Contract are payable by the Merchant to the Carrier on demand. Interest at Libor (or its successor) plus 2 per cent shall run from the date when freight, demurrage, charges, and/or other sums are due.

(b) The Merchant shall be liable for all costs and expenses of fumigation, gathering and sorting loose cargo and weighing onboard, repairing damage to and replacing packing not to exceeded causes, and any extra handling of the cargo for any of the aforementioned reasons.

(c) The Merchant shall be liable for any dues, duties, taxes and charges which under any denomination may be levied *inter alia*, on the basis of freight, weight of cargo or tonnage of the Vessel.

(d) The Merchant shall be liable for all fines, penalties, costs, expenses and losses which the Carrier, Vessel or cargo may incur through non-observance of Customs House and/or Import laws or export regulations.

(e) Any additional insurance premium charged by the Vessel's underwriters for breaching trading limitations (IWL or INL) or for the Vessel's passing through or remaining within any war risk areas are the responsibility of and for the account of the Merchant.

(f) The Carrier is entitled in case of incorrect declaration of contents, weights, measurements or value of the cargo to claim double the amount of freight which would have been due if such declaration had been correctly given. For the purpose of ascertaining the actual facts, the Carrier shall have the right to obtain from the Merchant the original invoice and to have the cargo inspected and its contents, weight, measurement or value verified.

**11. Lien.**
The Carrier shall have a lien on all cargo for any amount due under this Contract and the costs of recovering the same and shall be entitled to sell the cargo privately or by auction to satisfy any such claims.

**12. General Average and Salvage.**
General Average shall be adjusted, stated and settled at any port or place in Carrier's option according to the York-Antwerp Rules 1994, or any modification thereof, in respect of all cargo, whether carried on or under deck. In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which the Carrier is not responsible by statue, contract or otherwise, the Merchant shall contribute with the Carrier in General Average to the payment of any sacrifice, losses or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the carrier, salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers.

**13. Both-to-Blame Collision Clause.** (This Clause to remain in force even if unenforceable in the Courts of the United States of America). If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, negligence or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the Merchant will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her Owner in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the owner of the cargo paid or payable by the other or non-carrying vessel or her Owner to the owner of the cargo and set-off, recouped or recovered by the other non-carrying vessel or her Owner as part of his claim against the carrying vessel or Carrier. The foregoing provisions shall also apply where the Owner, operator or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

**14. Government directions, War, Epidemics, Ice, Strikes, etc.**
(a) The Master and the Carrier shall have liberty to comply with any order or directions or recommendations in connection with the carriage under this Contract given by any Government or Authority, or anybody acting or purporting to act on behalf of such Government or Authority, or having under the terms of the insurance on the Vessel the right to give such orders or directions or recommendations.

(b) Should it appear that the performance of the carriage would expose the Vessel or any cargo onboard to risk of seizure, damage or delay, in consequence of war, warlike operations, blockade, riots, civil commotions or piracy, or any person onboard to risk of loss of life or freedom, or that any such risk has increased, the Master may discharge the cargo at the Port of loading or any other safe and convenient port.

(c) Should it appear that epidemics; quarantine; ice; labour troubles, labour obstructions, strikes, lockouts (whether onboard or on shore); difficulties in loading or discharging would prevent the Vessel from leaving the Port of loading or reaching or entering the Port of discharge, or there discharging in the usual manner and departing therefrom, all of which safely and without unreasonable delay, the Master may discharge the cargo at the Port of loading or any other safe and convenient port.

(d) The discharge, under the provisions of this Clause, of any cargo shall be deemed due fulfillment of the contract of carriage.

(e) If in connection with the exercise of any liberty under this Clause any extra expenses are incurred they shall be paid by the Merchant in addition to the freight, together with return freight, if any, and a reasonable compensation for any extra services rendered to the cargo.

**15. Defences and Limits of Liability for the Carrier, Servants and Agents.**
(a) It is hereby expressly agreed that no servant or agent of the Carrier (which for the purpose of this Clause includes every independent contractor from time to time employed by the Carrier) shall in any circumstances whatsoever be under any liability whatsoever to the Merchant under this Contract of carriage for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default on his part while acting in the course of or in connection with his employment.

(b) Without prejudice to the generality of the foregoing provisions in this Clause, every exemption from liability, limitation, condition and liberty herein contained and every right, defence and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled, shall also be available and shall extend to protect every such servant and agent of the Carrier acting as aforesaid.

(c) The Merchant undertakes that no claim shall be made against any servant or agent of the Carrier and, if any claim should nevertheless be made, to indemnify the Carrier against all consequences thereof.

(d) For the purpose of all the foregoing provisions of this Clause the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who might be his servants or agents from time to time and all such persons shall to this extent be or be deemed to be parties to this Contract of carriage.

**16. Stowage.**
(a) The Carrier shall have the right to stow cargo by means of containers, trailers, transportable tanks, flats, pallets or similar articles of transport used to consolidate goods.

(b) The Carrier shall have the right to carry containers, trailers, transportable tanks, flats, and covered flats, whether stowed by the Carrier or received by him in a stowed condition from the Merchant, on or under deck without notice to the Merchant.

**17. Containers, trailers, transportable tanks, flats, box, pallet, packaging and stack ability.**
(a) The Carrier shall not be responsible or liable for any loss or damage to the contents of any container, trailer, transportable tank, flat, box, pallet or other package, where such have not been filled, packed or internally secured by Carrier, if such loss or damage has been caused by:
(i) improper filling, packing or internal securing;
(ii) the contents being unsuitably packed for carriage; or
(iii) unsuitable lifting lugs, cradles or lashing points.

(b) The Carrier does not accept liability for damage due to the unsuitability or defective condition of any container, trailer, transportable tank, flat, box, pallet or other packaging supplied by the Merchant.

(c) Merchant shall provide Carrier with cargo that is fully stackable, accurately marked, fitted with suitable lifting lugs, cradles or lashing points, and sufficiently packed for carriage.

(d) Any wood packing materials used by Merchant shall meet the requirements of International Standards for Phytosanitary Measures No. 15, with Modifications, or other requirements of the country of origin or destination.

**18. Return of Containers and other Carrier Articles of Transport.**
(a) Containers, flats, or similar articles of transport supplied by or on behalf of the Carrier shall be returned to the Carrier in the same order and condition as handed over to the Merchant, normal wear and tear excepted, with interiors clean and within the time prescribed in the Carrier's tariff or elsewhere.

(b) The Merchant shall be liable to the Carrier for any loss, damage to, or delay, including demurrage and detention incurred by or sustained to containers, flats, or similar articles of transport during the period between handing over to the Merchant and return to the Carrier.

**ADDITIONAL CLAUSES**

**A. Demurrage.**
Unless another sum is specified on Page 1, the Carrier shall be paid demurrage at the rate of USD $3.50 per Gross Registered Ton of the Carrying Vessel, pro rata per day, if the Vessel is/ not loaded or discharged with the dispatch set out in this Contract and/or delayed in waiting for berth at or off port, including any delays due to swell or tide. Each Merchant shall be liable towards the Carrier for a proportionate part of the total demurrage due, based upon the total freight on the cargo to be loaded or discharged at the port in question. No Merchant shall be liable in demurrage for any delay arising only in connection with cargo belonging to other Merchants.

**B. U.S. Trade, Period of Responsibility.**
(i) In case the Contract evidenced by this Bill of Lading is subject to the Carriage of Goods by Sea Act of the United States of America, 1936 (U.S. COGSA), then the provisions stated in said Act shall govern before loading and after discharge and throughout the entire time the cargo is in the Carrier's custody and in which event freight shall be payable on the cargo coming into the Carrier's custody.

(ii) If U.S. COGSA applies, and unless the nature and value of the cargo has been declared by the shipper before the cargo has been handed over to the Carrier, the value of said cargo has been inserted on Page 1 in box provided, and no extra charge for Ad Valorem is paid by Merchant, the Carrier shall in no event be or become liable for any loss or damage to the cargo in an amount exceeding USD 500 per package or customary freight unit.

(iii) During any pre-loading or post-discharge contractual extension of U.S. COGSA, the NO. OF PKGS., and KIND OF PACKAGES, DESCRIPTION OF THE CARGO collectively establishes the package or customary freight unit.

**C. Description of Cargo.**
If any reference or particulars of any letter of credit, import license, sales contract, invoice, or any contract to which the Carrier is not a party are shown on this Bill of Lading, such particulars are included at the sole risk of Merchant and for Merchant's convenience. Merchant agrees that the inclusion of such particulars shall not be regarded as a declaration of value and no way increases Carrier's liability.

**D. Carrier's Tariff.**
The terms and conditions of the Carrier's tariff, where applicable, are incorporated herein. Copies of relevant provisions of the Carrier's tariff are obtainable from the Carrier upon request. In the case of inconsistency between this Contract and Carrier's tariff, this Contract shall prevail.